# The United States and Cuban Allied Works Engineering Corporation *v.* International Association of Machinists, International Moulders Union of North America, L. Kelly, Appellant, and Others, Appellants.

*Equity—Injunction—Strikes—Contempt—Inquiry by court.*

Where a decree has been granted enjoining the members of an unincorporated labor union, who were on a strike, from interfering with the plaintiff's business by 'threats or intimidations, it is proper practice upon the violation of such decree, for the court to grant a rule on the defendants to show cause why they should not be adjudged in contempt.

Such contempt not having been committed in the presence of the court. The power to ascertain the important fact, whether or not the contempt had actually been committed by a violation of the decree, resided in the court which had entered the decree.

In order that a court may compel obedience to its orders, it must have the right to inquire whether there has been any disobedience thereof. To submit the question of disobedience to another tribunal, be it to a jury or another court, would operate to deprive the proceeding of half its efficiency. The court in which the decree was entered was the proper tribunal to ascertain and determine the fact, whether or not there had been a specific violation of it.

The fact that the plaintiff's property had, subsequent to the decree, passed into the hands of a receiver is immaterial, in so far as the contempt of the defendants is concerned.

Argued October 28, 1920. Appeals, Nos. 217, 218, 219, 220 and 221, Oct. T., 1920, by defendants from judgment

of C. P. McKean County, Oct. T., 1919, No. 3, Equity
Docket, adjudging the defendants in contempt in the
case of the United States and Cuban Allied Works En-
gineering Corporation v. International Association of
Machinists, International Moulders Union of North
America, L. Kelly, Appellant, and others.  Before OR-
LADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KEL-
LER and LINN, JJ.  Affirmed.

Proceedings by attachment for contempt for the al-
leged violation of injunction order.  Before BOUTON,
P. J.

The facts are stated in the opinion of the Superior
Court.

The court, having found that the defendants were in
contempt, ordered them to pay a fine and stand com-
mitted until the sentence was complied with. Defend-
ants appealed.

*Error assigned* was the order of the court.

*Rufus B. Stone,* and with him *Gallup & Potter,* for
appellants.

*John E. Mullin,* of *Mullin & Woods,* and with him
*Wilson & Fitzgibbon* and *Melvin & Melvin,* for appellee.

OPINION BY HEAD, J., March 5, 1921:

The bill that was filed in the court below by the plain-
tiff, designated by name or by description as members
of an unincorporated association, a number of defend-
ants.  It charged that the said defendants, or many of
them, had formerly been employees of the complainant
but were then conducting a strike; that they had con-
spired and combined "to drive away those workmen who
were employed," etc.; that they "have endeavored to
accomplish their unlawful purposes by violence, threats,
intimidation, and by the application of opprobrious

epithets to your orator's workmen, and by gathering in crowds about your orator's said plant, and by following its workmen upon the streets and holding them up to ridicule and contempt to bystanders and by assaulting them." After averring at length the commission of many acts of the character described, the bill prayed, inter alia, that defendants "be ordered and commanded by preliminary injunction, thereafter to be made perpetual, to desist and refrain from......compelling or inducing, or attempting to compel or induce, by threats, intimidation, force or otherwise, any of the employees of your orator to leave the service of your orator," etc. An answer was filed and the cause proceeded to final hearing. On October 20, 1919, a final decree was entered enjoining and restraining the defendants from, inter alia, "in any way or manner interfering with the employees of the plaintiff......by intimidation, personal violence, opprobrious epithets, ridicule, or any other means calculated or intended to prevent any such persons from entering or continuing in the employment of the plaintiff......and also from calling 'scab' or 'scabs' or any other opprobrious epithets, to persons passing along the streets and going to and from the works of the plaintiff," etc. No appeal having been taken from that decree, which in our opinion it was clearly within the jurisdiction and power of the court to enter, it must stand as it was made. It cannot collaterally be attacked in this proceeding, begun months later, to determine whether or not the restraining, injunctive order of the court had been contemptuously violated.

In March, 1920, the proper district court of the United States made an order appointing receivers to take over all of the property of the plaintiff described in the bill and continuing the operation of the manufacturing plant. On the 26th of May, 1920, an affidavit was filed in the court below by Fred G. Peck "Works Manager of the United States and Cuban Allied Works Engineering Corporation," reciting the bill and decree already re-

ferred to; the service of the decree upon the parties named therein and its subsequent contemptuous violation by certain persons named, praying the court for an attachment. A rule to show cause was granted, an answer filed, and hearing had and on June 15th this appellant was "adjudged in contempt of court for violation of the said injunction order" and being in open court was "sentenced to pay a fine of $100" or in default to be committed, etc. This appeal followed. The alleged contempt not having been committed in the presence of the court, the proceeding followed was the proper one. The power to ascertain the important fact, whether or not a contempt had actually been committed by a violation of the decree, resided in the court which entered the decree. In Patterson v. Wyoming District Council, 31 Pa. Superior Ct. 112, this court carefully reviewed the entire subject of proceedings for contempt and disposed of at least some of the questions presented by this appeal. We there said, "As the power to ascertain the fact of a contempt is a necessary and integral part of the right of a court to enforce its own decrees and to punish those who wilfully disregard or defiantly disobey them, it has been frequently held by courts of the highest authority that the decision of the court wherein the contempt was committed is, as to the fact of such contempt, final and not the subject of review." We there cited the following language from the opinion of Mr. Justice BREWER in re Debs, 158 U. S. 564, "But the power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been from time immemorial, the special function of the court. And this is no technical rule. In order that a court may compel obedience to its orders, it must have the right to inquire whether there has been any disobedience thereof. To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency." It is therefore

clear to us that the court below in which the decree had been entered was the proper tribunal to ascertain and determine the fact whether or not there had been a specific violation of it, and, as already stated, the procedure followed was in every respect in accordance with sound principles and thoroughly established precedents.

For the reason already stated we pass by the argument to sustain the proposition that because the bill itself did not particularize the words "scab" or "scabs" as some of the opprobrious epithets referred to, therefore the decree entered was wider than the prayer of the bill. We do not think it was, and if it were, this proceeding is not the channel through which to correct any irregularity in the form of the decree where the jurisdiction of the court making it has not been assailed and the decree itself had never been appealed from. Nor can we perceive any convincing force in the argument that, because of the appointment of receivers prior to the filing of the affidavit, the owner of the property or its "Works Manager" had no longer any such interest in the subject-matter of the decree as would permit either of them to invoke the aid of the court to enforce its own decree that had been made for the protection of the plant and property of the plaintiff, and to enable it to secure the services of those who were willing to work for it, without which services neither the owning company, nor the receivers temporarily operating it under the decree of court, could accomplish anything. The receivers were but the hands of the court; the property was being administered by the court, through its receivers, for the benefit first perhaps of the creditors of the owner, but next and certainly for the benefit of the stockholders of the owning company. It appears to us the right and the duty of that company to go into court and ask the aid of the court to enforce a decree so vital to the protection of its property and the security of its employees is so apparent, further discussion of that question is unnecessary.

Finally we cannot accept as sound the position of the learned counsel for the appellant that because the answer to the rule to show cause was responsive to the affidavit, and because evidence was offered in support of the answer, that, we use the language of counsel, "the appellant's purgation was complete." Once more we say it was the right and the duty of the court below to ascertain the existence or nonexistence of the alleged contempt. The judge was the trier of the fact. There was ample evidence to support the conclusion he reached and it ought not to be disturbed.

The assignments of error are overruled; the decree is affirmed and the appeal dismissed at the costs of the appellant.